# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANS HEITMANN, Individually and on behalf of other similarly situated individual Chicago Police Officers, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>CITY OF CHICAGO, )<br><br>Defendant. )<br>-------------------------------------------------- )<br><br>THOMAS LINNANE, Individually and on behalf of other similarly situated individuals, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>CITY OF CHICAGO, )<br><br>Defendant. ) | No. 04 C 3304<br>Consolidated with<br>No. 04 C 5712<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER

This is a consolidated representative action brought under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201, *et seq.*, against the City of Chicago by Hans Heitmann on behalf of himself and other similarly situated active and retired non-supervisory officers ("*Heitmann* plaintiffs") of the Chicago Police Department ("CPD"), and Thomas Linnane, on behalf of himself and other similarly situated active and retired members of the CPD with ranks of sergeant,

lieutenant and captain ("*Linnane* plaintiffs").[1] We refer collectively to these CPD personnel as "sworn members" or "plaintiffs." On September 11, 2007, the Court granted partial summary judgment for plaintiffs, solely with respect to their claim for injunctive relief in connection with the practices of the CPD in considering requests by sworn members to use FLSA compensatory time. *Heitmann v. City of Chicago*, Nos. 04 C 3304 & 04 C 5712, 2007 WL 2739559 (N.D. Ill. Sept. 11, 2007). However, the Court determined that the plaintiffs' general proposals for injunctive remedies lacked sufficient specificity. *Heitmann*, 2007 WL 2739559, *19. Accordingly, the Court postponed entry of an injunction pending submissions by the parties concerning their proposals for injunctive relief consistent with the Court's opinion. *Id.*, * 21.

The Court now has received two written submissions by the parties concerning injunctive relief, dated December 6, 2007 and January 8, 2008 (doc. ## 106, 108), and further argument from the parties in a hearing on December 11, 2007 (doc. # 107). The parties most recent written submission reflects substantial agreement on many of the elements of an injunction. However, there remain several areas of dispute, as well as several necessary elements of an injunction that the parties have not provided. Today, we enter an Injunction and Order in the form attached as an appendix to this Memorandum Opinion and Order.

In this Memorandum Opinion and Order, we do not address the portions of the injunction on which the parties agreed (App. A, ¶¶ 1-2, 4, 6, 11).[2] Rather, we explain our resolution of the

---

[1] The *Heitmann* and *Linnane* cases were consolidated on November 4, 2004 (*Linnane* doc. # 7). Pursuant to consent of all parties in both cases, and pursuant to 28 U.S.C. § 636(c), both cases were assigned to this Court for all proceedings, including the entry of final judgment (*Heitmann* doc. ## 12-14; *Linnane* doc. ## 8-10).

[2] The Court has modified some of the wording of these agreed provisions from that suggested by the parties, but not in a way that changed the substance of that to which they agreed.

2

disputed elements of the injunction (*Id.*,¶¶ 3, 5, 8- 9), as well as the additional elements that we have deemed it appropriate to include in the Injunction and Order (*Id.*,¶¶ 3, 5, 7, 9-10, 12-13).[3]

## I.

As we explained in our summary judgment opinion, a sworn member who wishes to use FLSA compensatory time must make the request within a "reasonable period" of time before the date on which he or she seeks the time off. *Heitmann*, 2007 WL 2739559, *13 (the concept of a reasonable period "includes an obligation on the employee to give adequate notice if he/she wants to use compensatory time on a particular day"). Plaintiffs propose that this reasonable period be defined as at least 48 hours prior to the date for which the sworn member seeks time off; the City proposes that the reasonable period be defined as 10 days (doc. # 108: Joint Proposed Order, at 2,3). In our Injunction and Order, we select 48 hours as the reasonable period for several reasons.

Adoption of a 10-day notice requirement would severely restrict the sworn members' ability to use FLSA compensatory time. As a practical matter, it may often be the case that a sworn member will not know 10 days in advance if he or she wants or needs a particular day off. Moreover, as we explained in our summary judgment opinion, "it is axiomatic" that a request for FLSA compensatory time made without reasonable notice "would be unduly disruptive," and would relieve the CPD of any FLSA obligation to seek a replacement employee. *Heitmann*, 2007 WL 2739559, * 13. It would heavily burden sworn members' right to use FLSA compensatory time to require in all instances requests to be made 10 days in advance, on pain of having the request peremptorily denied for failing to do so.

---

[3]In this opinion, we assume familiarity with our summary judgment opinion. Accordingly, we will recite evidence or rulings from that opinion only as necessary to understand the elements of the Injunction and Order that we enter today.

3

Conversely, we find that deeming requests to be within a reasonable period if made with 48 hours notice would not unduly burden the CPD. During the hearing on December 11, 2007, the City explained that it would prefer ten days notice as a "management tool to give the CPD "enough time to assess what their staffing is going to be" and to afford the CPD "some flexibility on scheduling and manpower" (12/11/07 Tr. at 18-19, 25). However, the City did not cite the 10-day period as an imperative. To the contrary, the City candidly allowed that the only way a request for FLSA time would be denied is if it created undue disruption (more on that below), and that whether sworn members request FLSA compensatory time with 10 days or 48 hours notice, "probably nine and a half times out of ten they're going to get that time" (*Id.* at 20). We further note that a settlement of an FLSA compensatory time dispute between police officers and the City of Milwaukee, Wisconsin has implemented a requirement of no less than 48 hours notice (doc. # 108: Joint Proposed Order, Ex. 1 at 34), and we have no evidence that Milwaukee has experienced any problems in working with that requirement.[4]

Thus, we select 48 hours as the minimum advance notice that will constitute a reasonable period for a sworn member to request FLSA compensatory time (App. A, ¶ 3).

**II.**

---

[4] We appreciate that the City may further seek a 10-day notice period because that is what is contractually required when a sworn member seeks to use contractual compensatory time (12/11/07 Tr. 18). However, the parties have not contractually agreed to 10 days – or any other time – as the "reasonable period" for making a request for FLSA compensatory time, despite the fact that the statute and regulations allow them the freedom to do so. *See Heitmann*, 2007 WL 2739559, * 13 and n.10. For the reasons we have explained, we do not believe that the 10-day period is appropriate for requests for FLSA compensatory time. In addition, so as to avoid any confusion between whether a sworn member's request seeks to use FLSA or contractual compensatory time, our Injunction and Order will give the City the freedom to use separate Time Due Slips for FLSA and other requests or a unitary form of Time Due Slip for all compensatory time requests. In the event a unitary form is used, the sworn member will be required to specify in a box provided on that Time Due Slip what type of compensatory time is being sought (App. A, ¶¶ 9(A)-(B)).

4

When a sworn member makes a request for FLSA compensatory time within a reasonable period, the City is required to grant that request for "the specific date requested, unless the employer reasonably and in good faith determines that granting the request on that date could unduly disrupt the employer's operations." *Heitmann*, 2007 WL 2739559, *16. In line with our earlier decision, *Id.*, the parties have agreed on what does not constitute "undue disruption":

> Payment of premium pay or overtime to a replacement sworn member ("replacement") to enable a requesting sworn member to use FLSA compensatory time does not constitute an undue disruption to Chicago Police operations.

(doc. # 108: Joint Proposed Order, at 2). We have included that statement in the Injunction and Order (App. A, ¶ 6).

However, the parties do not agree on language that affirmatively defines what does constitute an undue disruption (doc. # 108: Joint Proposed Order, at 2). Both parties agree that the CPD cannot turn down a request for FLSA time unless it "reasonably and in good faith anticipates" that granting such a request would impose "an unreasonable burden" on the CPD's "ability to provide" services to the public. The only words that are different in the proposal have to do with what kind of services the CPD would not be able to provide to satisfy this standard. The plaintiffs' proposal would require CPD to show an unreasonable burden on its "ability to provide services of acceptable quantity and quality for the public during the time requested without the use of the employee's services." These words come directly from the preamble to the regulations governing 29 U.S.C. § 207 (o)(5). *See* 29 C.F.R. § 553.25(d). On the other hand, the City's proposal would say that what must be unreasonably burdened is the CPD's "ability to provide effective police service to the public or endanger sworn members' safety if the request were granted."

The parties have not explained what difference they see in these articulations. That said, since the parties cannot agree on the language, we must choose: and, for several reasons, we choose the elements of both plaintiffs' and the City's formulation.

*First*, we do not see much difference between the standard of "effective" services in the City's proposal and the standard of services of "acceptable quantity and quality" that plaintiffs propose. Presumably, if the services are of acceptable quantity and quality, then they would be effective. Since the difference between these formulations strikes us as more semantic than substantive, we will adopt plaintiffs' proposal to include this standard, which tracks the regulatory language. *Second*, the City would add as a standard for undue disruption the phrase about endangering sworn officers' safety. We think that addition is appropriate. The "undue disruption" standard must, if nothing else, mean that FLSA compensatory time can be denied when granting it would endanger other sworn officers' safety.

Thus, the Injunction and Order states that undue disruption will exist only where the CPD reasonably and in good faith anticipates that allowing the sworn member to take off the requesting FLSA compensatory time "would impose an unreasonable burden on the CPD's ability to provide services of acceptable quantity and quality for the public during the time requested without the use of the employee's services, or would endanger sworn members' safety if the request were granted" (App. A, ¶ 5). We hasten to add that we fail to see how the City will be able to show undue disruption under this standard if the CPD, which is obligated to seek a replacement, is able to find a replacement to work the time off requested by the sworn member seeking FLSA compensatory time (App. A, ¶ 6). Moreover, to promote compliance with this requirement and to provide a way to monitor compliance, we have included in the Injunction and Order provisions requiring CPD to

6

provide a written statement of the reason for any denial of FLSA compensatory time and the efforts the CPD made to find a replacement (App. A, ¶¶ 5, 9(B)); to provide the requesting sworn member with that statement of reasons (*Id.*, ¶ 9(B)); and to submit to audits for a period of one year with respect to its consideration of requests for FLSA compensatory time (*Id.*, ¶10).

## III.

We next address the issue of how the City must revise the Time Due Slip, used to request FLSA compensatory time, to better ensure compliance with its obligation in handling sworn members' requests for FLSA compensatory time. The parties' only significant disagreement is as to whether the time due slips should include separate boxes for FLSA and contractual compensatory time, which would enable the CPD to treat requests for FLSA compensatory time differently from contractual compensatory time. The City seeks to have these separate boxes; plaintiffs oppose the request (doc. # 108: Joint Proposed Order, at 3-4).

We adopt the City's proposal to have a Time Due Slip that provides for the sworn member to specify if he or she seeks to use FLSA compensatory time. The Injunction and Order seeks to ensure that the City complies with the statutory dictates of the FLSA. Better record keeping – which ensures a paper trail that allows the City to monitor its compliance, that satisfies CPD employees of FLSA compliance, and that allows the CPD's performance under the Injunction and Order to be monitored – will advance that goal. Separating out the request for FLSA time from contractual time is one important way to maintain better and more accurate records.

Moreover, we find that the City has a legitimate interest in being able to separate requests for FLSA compensatory time from other requests for time off for several reasons. The City's obligations with respect to requests for FLSA compensatory time are different than they are for

contractual compensatory time in several ways. *First*, under the Injunction and Order, the City is obliged to treat requests for FLSA compensatory time made with 48 hours advance notice as being made within a "reasonable period"; by contrast, according to the City, a sergeant, lieutenant or captain seeking contractual compensatory time must make the request with 10 days advance notice (12/11/07 Tr. at 15, 17, 22). *Second*, under the Injunction and Order, the City must seek replacements in response to a request by a sworn member for FLSA compensatory time; but, the City apparently has no obligation to do so in response to a request for contractual compensatory time (*Id.*, at 22). *Third*, the City's obligations with respect to requests by sworn members for FLSA compensatory time are a matter of court order, whereas its obligations in responding to requests for contractual compensatory time are contractual. These considerations constitute a sound basis to require that sworn members make it clear when they are seeking to use FLSA compensatory time, rather than contractual compensatory time or some other time off.[5]

We therefore adopt the City's proposal that the Time Due Slip provide for the sworn member to specify the type of compensatory time being requested, and we further require the sworn member to make that specification when submitting the request for FLSA compensatory time (App. A, ¶¶ 8, 9(A)). We have modified this proposal, however, to spell out several important details that must also be included on the Time Due Slip. *First,* when completing the Time Due Slip, the sworn member must make clear what category of time off the sworn member is seeking, and the date or dates that

---

[5]We note that in the absence of some way to distinguish requests for FLSA compensatory time from requests for other time off, the City might be forced to treat all requests for compensatory time off as FLSA requests, so as to avoid violating the Injunction and Order. However, as we have made clear, both in our summary judgment ruling, *Heitmann*, 2007 WL 2730550, * 20, and during the December 11, 2007 hearing (12/11/07 Tr. at 25-26), it is not our province to grant plaintiffs' modifications of the contractual compensatory time agreements that they failed to obtain at the bargaining table. By rejecting plaintiffs' proposal regarding the Time Due Slips, we thus decline to allow them to achieve indirectly what we have declined to provide them directly.

8

are requested (*Id.*, ¶ 9(A)). *Second*, the CPD's decision on the request must be stated in writing on the Time Due Slip, along with the basis for any determination of undue disruption and the efforts made to find a replacement (*Id.*, ¶ 9(C)).

## IV.

We now briefly describe certain additional terms that we have added, which were not offered by the parties but that we find are important to proper injunctive relief. We have already discussed some of those additional terms, which are found in Paragraphs 3, 5, and 9. The others are found in Paragraphs 7, 9-10, and 12-13.

In Paragraph 7, we provide that if the CPD denies a request for FLSA compensatory time, the CPD has no obligation to provide an alternative date on which the sworn member could take FLSA compensatory time; instead, the sworn member must make a new request. In the joint proposed order, neither party suggested that the CPD had an obligation to provide alternative dates. However, because our opinion suggested that the CPD should do so, *Heitmann*, 2007 WL 27396559, * 18, we deem it prudent to make clear in the Injunction and Order that the CPD does not have that obligation.

In Paragraph 10, we set forth a deadline for the City to implement a Time Due Slip that meets the requirements of Paragraphs 8-9 of the Injunction and Order, and a procedure for permitting audits, at the City's expense, for a period of one year thereafter in order to monitor the City's compliance with the Injunction and Order. The number of audits will be limited to three during that one-year period; they may be conducted on reasonable notice; they will be performed by a person agreed upon by the parties (or, in the absence of agreement, selected from choices provided by the parties); and the name(s) of the person(s) conducting the audit will be given to the parties and the

Court. These audits will enable the Court and the parties to identify any problems that might occur with the implementation of the revised Time Due Slip process and/or consideration of FLSA compensatory time requests, and permit the City (or, if necessary, the Court) to make any necessary adjustments or corrections.

Finally, in Paragraphs 12 and 13, we require the City to give notice to appropriate persons so that they will be bound by the terms of the Injunction and Order under Fed. R. Civ. P. 65(d), and we expressly retain jurisdiction to enforce the Injunction and Order and to adjudicate any further proceedings arising thereunder.

## CONCLUSION

In closing, we note that in fashioning the Injunction and Order, we have attempted to do what is necessary to implement our summary judgment ruling without attempting to "micro manage" the specific procedures and methods that the City uses to satisfy statutory FLSA obligations (12/11/07 Tr. at 27). We have attempted to set out with sufficient specificity what is required of the City, in order to avoid needless disputes down the road, while at the same time affording the City the maximum degree of flexibility in fulfilling its requirements (such as, what procedure the CPD will use to attempt to recruit replacements). In the end, the audit process is available to provide a means for assessing the effectiveness of the City's implementation of procedures to fulfill those requirements.

Accordingly, the Court today enters an Injunction and Order in the form attached to this Opinion as Appendix A. The matter is set for a status hearing on March 5, 2008 at 9:00 a.m.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: February 21, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HANS HEITMANN, Individually and )
on behalf of other similarly situated )
individual Chicago Police Officers, )
)
          Plaintiffs, )
)
vs. )
) No. 04 C 3304
CITY OF CHICAGO, ) Consolidated with
) No. 04 C 5712
          Defendant. )
)
----------------------------------------- ) Magistrate Judge Schenkier
)
THOMAS LINNANE, Individually and )
on behalf of other similarly situated )
individuals, )
)
          Plaintiffs, )
)
vs. )
)
CITY OF CHICAGO, )
)
          Defendant. )

## INJUNCTION ORDER[1]

On September 11, 2007, this Court granted plaintiffs in these consolidated cases summary judgment, solely as to their claim for injunctive relief as to the City of Chicago's practices in considering requests by non-supervisory officers, sergeants, lieutenants and captains of the Chicago

---

[1] Pursuant to 28 U.S.C. § 636(c) and by the consent of the parties, the *Heitmann* and *Linnane* cases have been assigned to this Court for all proceedings, including the entry of final judgment and injunctive relief (*Heitmann* doc. ## 12-14; *Linnane* doc. ## 8-10). Jurisdiction over these actions is conferred on this Court by 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

**APPENDIX A**

Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"). *Heitmann v. City of Chicago*, Nos. 04 C 3304 & 04 C 5712, 2007 WL 2739559 (N.D. Ill. Sept. 11, 2007). We directed the parties to confer concerning appropriate injunctive relief consistent with the Court's opinion. *Id.*, 2007 WL 2739559, * 21. We have considered the written submissions of the parties concerning injunctive relief on December 6, 2007 and January 8, 2008 (doc. ## 106, 108), as well as the parties' statements during a hearing on December 11, 2008 (doc. # 107).

Pursuant to Fed.R.Civ.P. 65(d), the Court hereby enters the following Injunction and Order against the City of Chicago, which will control all parties' conduct in this case:

1. All Chicago Police officers, sergeants, lieutenants, and captains (collectively "sworn members") who wish to use accrued FLSA compensatory time must submit a written request to the appropriate supervisor in their chain-of-command.

2. The CPD shall grant any request to use FLSA compensatory time that is made within a reasonable period of time, unless granting the request would unduly disrupt CPD operations.

3. As used in this Injunction and Order, a request is made within a "reasonable period" if it is made by the sworn member in writing, using the time slip process set forth in Paragraph 9 below, no less than 48 hours before the shift for which compensatory time off is requested.

4. In considering a sworn member's request to use FLSA compensatory time that has been made within a reasonable period, the CPD must seek a replacement sworn member ("replacement") if the CPD deems a replacement necessary to maintain necessary staffing levels. The CPD shall determine the procedures for seeking

2

replacements. However, in seeking replacements, the CPD shall consider the names of any proposed replacements offered by the sworn member who has requested the use of FLSA compensatory time.

5. As used in this Injunction and Order, the term "undue disruption" means any situation that the CPD reasonably and in good faith anticipates would impose an unreasonable burden on the CPD's ability to provide effective police service to the public or endanger sworn members' safety if the request were granted. In any case where the CPD denies a sworn member's request for FLSA compensatory time that was made within a reasonable period on the ground of undue disruption, the CPD must provide a written explanation of the reason(s) for determining the existence of the undue disruption (*e.g.*, what measures the CPD took to find a replacement officer; why police services would not be "effective" and/or why granting the request would "endanger" another "sworn officer's safety").

6. The need for the CPD to pay premium pay or overtime in order to attract a replacement necessary to enable a sworn member to use FLSA compensatory time requested within a reasonable period shall not be deemed to constitute an undue disruption as defined in this Injunction and Order, and shall not provide a basis to deny a sworn member's request to use FLSA compensatory time that was made within a reasonable period.

7. In any case where the CPD denies a sworn member's request for FLSA compensatory time made within a reasonable period, the CPD shall be under no obligation to offer alternative date(s) on which the requesting sworn member could take FLSA

compensatory time. A sworn member whose request for FLSA compensatory time has been denied must request a new date and begin the process anew.

8. The CPD shall implement a revised Time Due Slip which sworn members shall use to request FLSA compensatory time, and which the CPD shall use to record the grant or denial of the request as well as the reason(s) for any denial. The Time Due Slip may allow an officer to specifically identify whether he or she is requesting FLSA compensatory time, contract compensatory time, or some other time off. However, this Injunction and Order shall govern only requests that are made for FLSA compensatory time.

9. The revised Time Due Slips shall be placed into use by no later than March 31, 2008. CPD shall have the responsibility to develop the Time Due Slip form, subject to the following requirements:

   A. The Time Due Slip shall provide sufficient space for the requesting sworn member to identify the date(s) on which he or she seeks to use FLSA compensatory time, as well as any sworn members who might serve as a replacement. If the form of Time Due Slip developed by the CPD is designed to be used for requests for time off other than FLSA compensatory time, the form shall provide a space for the sworn member to identify whether the request is for FLSA compensatory time.

   B. One copy of the Time Due Slip requesting FLSA compensatory time shall be retained by the sworn member, and one will be submitted to the CPD for consideration of the request.

C. Once the CPD has decided the request for FLSA compensatory time, the CPD shall promptly notify the requesting sworn member of the decision and shall record the decision on the Time Due Slip. The CPD supervisor deciding the request shall record on the Time Due Slip whether the request has been granted or denied. In the event the request is denied, the CPD supervisor shall additionally record on the Time Due Slip a written explanation of what efforts the CPD made to seek replacements, and the basis for any conclusion by the CPD that granting the request for FLSA compensatory time would create undue disruption. This requirement will not be satisfied by an unexplained statement that the request was denied on the basis of "undue disruption." The CPD shall provide the sworn member with a copy of the Time Due Slip containing the disposition of the request, and the CPD shall retain a copy.

10. In order to monitor compliance with this Injunction Order, for the period from April 1, 2008 through March 31, 2009, which is one (1) year after implementation of the revised Time Due Slips, the City shall permit the plaintiffs' counsel to obtain periodic audits to ensure full compliance with this Injunction and Order and the FLSA. The audits shall be conducted by an individual or individuals agreed to by the parties (or in the absence of agreement, selected by the Court after considering suggestions by the parties). During this one-year period, the City shall retain the Time Due Slips of all requests by sworn members for FLSA compensatory time. An audit may be conducted on reasonable notice to the City. No more than three (3) audits may be done in the 12-month period identified. The audits may be documented in any

reasonable way deemed fit by the auditor(s), with due consideration being given to the goal of obtaining accurate information while at the same time not causing unnecessary interference with CPD's operations. Neither plaintiffs' counsel nor CPD's counsel may accompany the auditor on the audit. Within thirty (30) days after an audit, the auditor shall submit a written report to the Court, with copies to be supplied by the auditor to the parties' counsel. The cost of the audits shall be borne by the City.

11. The CPD shall offer training and/or prepare written guidelines for supervisors that will give guidance on handling requests to use FLSA compensatory time, explaining the circumstances under which requests to use FLSA compensatory time must be granted and can be denied.

12. Within 14 days of the date of this Injunction and Order, the City shall provide a copy of this Injunction and Order to its officers, agents, employees and attorneys and to all persons (including unions) who will be responsible for implementation of this Injunction and Order and its terms.

13. The Court retains jurisdiction for enforcement of this Injunction and Order, and adjudication of any further proceedings and issues arising thereunder.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: February 21, 2008**